United States District Court
Northern District of California

1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    **O. MATTHEW THOMAS,**                    Case No.  14-cv-03043-YGR

          Plaintiff,
8
                                               **ORDER DENYING MOTION FOR LEAVE TO**
9         v.                                   **AMEND; GRANTING MOTION FOR**
                                               **SUMMARY JUDGMENT**
10   **SAN FRANCISCO TRAVEL ASSOCIATION,**
                                               Re: Dkt. Nos. 38, 47
          Defendant.
11

12          In this civil rights action, plaintiff O. Matthew Thomas accuses defendant San Francisco

13   Travel Association of race-based discrimination.  Before the Court is plaintiff's motion for leave

14   to file an amended complaint (Dkt. No. 47) and defendant's motion for summary judgment (Dkt.

15   No. 38).  Having carefully considered the papers submitted, the record in this case, and the

16   arguments of counsel, and good cause shown, the Court **DENIES** plaintiff's motion for leave to

17   amend and **GRANTS** defendant's motion for summary judgment.

18   **I.    BACKGROUND**

19          The above-captioned case was filed in state court on May 20, 2014, and removed to this

20   Court on July 3, 2014.  (Dkt. No. 1 ¶ 1.)  Plaintiff O. Matthew Thomas, doing business as Visit

21   San Francisco, LLC,[1] asserted a single cause of action—violation of 42 U.S.C. § 1981, alleging

22   race-based discrimination.  (Dkt. No. 1-1 ("Complaint").)  Defendant San Francisco Travel

23   Association is a California nonprofit that receives taxpayer funding from San Francisco to

24   promote tourism to the city.  (*Id.* ¶ 4.)  Plaintiff, one of three African Americans on defendant's

25   board of directors in 2007, was allegedly asked to step down during his second term "for no stated

26

27          [1] As the Court previously recognized (Dkt. No. 35), the real party in interest may in fact be
28   a corporation, and not solely an individual.

United States District Court
Northern District of California

1    reason." (*Id*. ¶ 5.)  His company, Visit San Francisco, LLC, remains a member of San Francisco

2    Travel Association.  (*Id*. ¶ 6.)

3        In November 2012, defendant approached plaintiff, seeking to buy trademark rights to

4    plaintiff's "Visit San Francisco" mark.  (*Id*. ¶ 7.)   The parties tentatively agreed on a $75,000

5    purchase price. (Dkt. No. 44-1 ("SSMF"), Issue 1, Fact 3.)  Plaintiff insisted the deal include

6    additional outreach efforts directed at African American tourists, including a new page on

7    defendant's website "devoted to African American travelers and local businesses." (Complaint ¶

8    7.)  Defendant thereafter provided plaintiff with a proposed written agreement on February 28,

9    2013, with a $65,000 purchase price, indicating the decrease was due to passed along costs of the

10   website updates defendant had requested.  (SSMF, Issue 1, Fact 6; Issue 2, Fact 22.)  On March

11   12, 2013, plaintiff accused defendant of failing to inform him of their pending trademark

12   application for the mark in question.  (*Id*., Issue 1, Fact 8.)  On March 19, 2013, plaintiff told

13   defendant that he had spoken to "Visit Denver" and "Visit Wichita" groups, learned that the names

14   were invaluable to them, and requested defendant therefore "make a fair and reasonable offer" or

15   cease pursuing its trademark application.  (*Id*., Issue 1, Facts 9-10.)  Heated negotiation followed,

16   and on March 28, 2013, plaintiff apologized for using confrontational language that he said came

17   from his lawyer, who had him "firmly convinced" that he "was being taken for a fool."  (*Id*., Issue

18   1, Fact 14.)  The parties met in person on April 16, 2013, and although plaintiff was finally willing

19   to sign the contract at the $65,000 price, the parties did not reach an agreement that day.  (*Id*.,

20   Issue 1, Fact 16.)

21       On June 6, 2013, defendant filed for an extension on its "intent to use" application with the

22   U.S. and Trademark Office regarding the "Visit San Francisco" mark.  (*Id*., Issue 1, Fact 18.)  On

23   June 20, 2013, plaintiff filed suit against defendant in state court, alleging threatened trademark

24   infringement and threatened violation of California's Unfair Competition Law, Cal. Bus. & Prof.

25   Code § 17200 *et seq*. ("UCL").  (*Id*., Issue 1, Fact 19.)  Thereafter, defendant abandoned its

26   trademark application and no longer pursued negotiations with plaintiff.  (*Id*., Issue 1, Facts 21-

27   22.)

28

United States District Court
Northern District of California

## II.     LEAVE TO AMEND

Plaintiff requests leave to amend his complaint to seek injunctive relief for threatened violation of his common law service mark and trade name, "Visit San Francisco," and for threatened violation of the UCL, in addition to his claim for race-based discrimination.  (Dkt. No. 47.)  As this motion for leave to amend was filed after the deadline for amending the pleadings, Rule 16 governs.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  Rule 16(b) provides that a scheduling order may be modified only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4).  The good cause standard primarily considers the diligence of the party seeking the amendment.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992).  If a party meets the good cause standard under Rule 16, the Court may then consider whether leave to amend should be granted pursuant to Rule 15(a).  While leave to amend under Rule 15(a) is liberally granted, the Court still must evaluate whether there has been undue delay, bad faith, or a dilatory motive; repeated failure to cure deficiencies; prejudice to the defendant; or if the amendment would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the scheduling order set a deadline of October 31, 2014 to amend the pleadings. (Dkt. No. 12.)[2]  Moreover, the proposed amendment adds claims that are largely duplicative of a 2013 suit plaintiff filed in state court, with the addition of alleged Google AdWords purchases for "Visit San Francisco" by defendant.  Plaintiff does not explain when he learned of this conduct or present a case for diligently seeking leave to amend thereafter, he merely states that his current counsel, Elias Portales, reached this determination "[u]pon further review of the Claim and examination of [unspecified] new evidence."  (Dkt. No. 49 at 2.)  The cited evidence, however, suggests plaintiff was aware of most of the relevant circumstances for years.  (Dkt. No. 49-1.)  For

---

[2] Plaintiff argues this deadline does not apply in light of the order upon reassignment vacating earlier deadlines.  (Dkt. No. 49 at 3.)  The previous judge's reassignment order merely stated that "[a]ll pending dates of motions, pretrial conferences and trial are vacated and will be reset by the newly assigned judge."  (Dkt. No. 31 at 2.)  That order, however, did not issue until September 24, 2015, nearly a year after the October 31, 2014 deadline had elapsed.  Plaintiff also suggests leave should be granted because his current counsel did not join the case until June 2015 and therefore "clearly could not meet the original scheduling deadline . . . ."  (Dkt. No. 49.)  Of course, parties are not automatically absolved of complying with case deadlines merely because they turn to new counsel for representation.

3

instance, plaintiff submitted a declaration which attaches what plaintiff perhaps considers the "new evidence" warranting amendment at this late date. (Dkt. No. 49-1.) In fact, all of the attachments were apparently in plaintiff's possession for years except for a reference to the summary judgment briefing and a third-party letter dated December 10, 2015 that "merely confirms" a 2013 business dealing with plaintiff. (Dkt. No. 49-1 at 9.) Plaintiff was likely contemporaneously aware of the relevant circumstances surrounding the 2013 business deal. The Court will not find good cause for leave to amend merely because plaintiff conveniently sought a confirmatory letter soon before filing his motion.

In an attempt to distract from this unwarranted delay, plaintiff explains that Mr. Portales did not join the case until June 24, 2015. (Dkt. No. 18.) However, the motion for leave to amend comes about seven months after Mr. Portales joined the case and informed opposing counsel that "amendment should be allowed" based on defendant's "continued usage of Mr. Thomas' trade name." (Dkt. No. 48-1 at ¶ 6, Ex. 4.) Plaintiff did nothing to explain why a seven month delay was warranted. Notably, plaintiff held off on filing the motion for leave to amend until after defendant had gone through the expense of filing and fully briefing its motion for summary judgment. Defendant has represented to the Court that it spent tens of thousands of dollars on the motion. In light of these circumstances the Court **DENIES** the motion.

## III.   SUMMARY JUDGMENT

### A.   Legal Standard

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*

*v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by identifying the absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25; *Soremekun*, 509 F.3d 984.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e).  The opposing party's evidence must be more than "merely colorable" and must be "significantly probative."  *Anderson*, 477 U.S. at 249-50.  Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).  It is not a court's task "to scour the record in search of a genuine issue of triable fact," rather a court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

**B.    Analysis**

The complaint alleges a single cause of action under the Civil Rights Act, 42 U.S.C. §

United States District Court
Northern District of California

1981.  Section 1981 prohibits race-based discrimination in the "benefits, privileges, terms, and conditions" of a contractual relationship.  42 U.S.C. § 1981(b).  The statute applies equally to state or private discrimination, including in the case of private employers.  *See Runyon v. McCrary*, 427 U.S. 160, 205 (1976).  Outside of the employment discrimination context, a plaintiff must demonstrate three elements to state a prima facie case under Section 1981: "(1) [he] is a member of a protected class, (2) [he] attempted to contract for certain services, and (3) [he] was denied the right to contract for those services."  *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006).  Thereafter, the burden shifts to the defendant to establish a legitimate non-discriminatory reason for its decision.  *Id*. at 1147-48.  If one is established, the burden shifts back to the plaintiff to show that the proffered reason is pretextual.  *Id*. at 1148.

Here, it is unclear whether plaintiff has even established a prima facie case where he was offered, and refused, a contract offer.  However, even if the circumstances of a rejected counter-offer were sufficient to state a prima facie case, defendant has presented a compelling case that its ultimate refusal to contract was not based on race.  Defendant has failed to put forth evidence creating a genuine dispute of material fact as to whether this explanation is pretextual.

The undisputed material facts establish defendant approached plaintiff, knowing he was African American (SSMF, Issue 1, Fact 2), and made him a substantial offer.  Plaintiff's additional proposed term, that defendant update its website to prominently feature African Americans, was accepted so long as he agreed to a reduced price to cover the cost of the website updates.  He initially refused this proposal, began accusing defendant of improper conduct and demanding more money,[3] and ultimately filed suit against defendant for threatened trademark infringement.  At the time plaintiff finally submitted a signed agreement to defendant, defendant's refusal to do business with plaintiff for these non-discriminatory reasons (i.e., plaintiff's tough negotiation tactics and accusations) is understandable.  While plaintiff puts forth more troubling allegations—

_____

[3] Plaintiff appears to dispute having requested more money, however he provides no supporting evidence, merely lawyer argument.  By contrast, the evidence submitted by defendant clearly establishes plaintiff's demands for more money.  (*See, e.g.*, Dkt. No. 38-3, Ex. 8 (wherein plaintiff wrote to defendant as follows: "please let your April Executive Committee attendees know that I'll accept no less than twice your offer").)

United States District Court
Northern District of California

including claims that defendant's representative said "[w]e don't know if we want to do business with you people" (Dkt. No. 40-1 at 6) and that defendant ultimately entered into a similar agreement with a "white owned company" (Dkt. No. 40 at 8)—plaintiff has failed to cite any *evidence*, by self-serving declaration or otherwise, in support thereof, only lawyer argument.  In such circumstances, the Court finds summary judgment in defendant's favor is appropriate and therefore **GRANTS** the motion.[4]

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiff's motion for leave to amend and **GRANTS** defendant's motion for summary judgment.  Defendant shall submit a proposed form of judgment, approved as to form by plaintiff, within five (5) business days.

This Order terminates Docket Numbers 38, 47.

**IT IS SO ORDERED.**

Dated: March 7, 2016

_____
**YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE**

---

[4] Notably, at the hearing on these motions, plaintiff's counsel essentially conceded that in the absence of leave to amend, the motion for summary judgment should be granted.

United States District Court
Northern District of California